IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUEL RODRIGUEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WIDENER UNIVERSITY, | : | |
| et al. | : | NO. 13-1336 |

## MEMORANDUM

**Padova, J.**                                                                                    **June 17, 2013**

Miguel Rodriguez filed a Complaint on March 13, 2013, naming as defendants Widener University ("the University"), Widener professor David Coughlin, Widener Associate Provost and Dean of Students Denise Gifford, Widener's Director of Campus Safety Patrick Sullivan (collectively "the Widener Defendants"), the City of Chester, Pennsylvania, and Chester Police Officer Matthew Donohue.  Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 sounding in a due process violation for termination of his employment at the University and his dismissal as a student (Counts I and II); a claim under § 1983 for violation of his equal protection rights (Count III); a claim under § 1983 for violation of his right to privacy (Count IV); a claim for violation of the Rehabilitation Act, 29 U.S.C. § 701, et seq. (Count V); a claim for violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511 and 2520 (Count VI); a claim for violation of the Stored Communications Act, 18 U.S.C. § 2701, et seq. (Count VII); and a Pennsylvania state law claim for invasion of privacy (Count VIII).  Presently before the Court is the Widener Defendants' Motion to Dismiss.  For the following reasons, the Motion is granted in part and denied in part.

## I.    BACKGROUND

The Complaint alleges the following facts.  Rodriguez, an honorably discharged Navy veteran, was enrolled under the G.I Bill in the University's Biology Pre-Med program earning above average grades.  (Compl. ¶¶ 1, 8, 10, 11.)  Defendant Coughlin was assigned to be his faculty advisor.  (Id. ¶ 12.)  He and Coughlin were "at odds as a result of Plaintiff's view on 'Creationism' and Coughlin's views of 'Evolution.'"  (Id.)  While he was enrolled as a student, Plaintiff was also employed by the University as an advisor and Operations Manager.  (Id. ¶ 13.)

On March 16, 2011, Rodriguez was required to appear in the office of Dean Gifford.  (Id. ¶ 14.)  He alleges that Gifford, Sullivan, and the University obtained proprietary information from Rodriguez's medical providers in North Carolina without his authorization.  (Id. ¶ 15.)  Sullivan also obtained access to his Facebook account and printed images that he had posted.  (Id. ¶ 16.)  At the March 16 meeting, Rodriguez was interrogated by Officer Donohue, Sullivan, and Gifford regarding his emails and Facebook postings, without being advised of his Miranda rights.  (Id. ¶ 17.)  Sullivan informed Plaintiff that he was temporarily suspended due to the fact that he was perceived to be a threat to the community because he displayed images of weapons on his Facebook page.  (Id. ¶¶ 19, 25.)

At the end of the meeting, Officer Donohue concluded that it was necessary for Plaintiff to be involuntarily evaluated regarding his mental health at Crozer Chester Medical Center.  (Id. ¶¶ 22, 24.)  After he was placed in a police car, Officer Donohue searched Rodriguez's backpack and found a knife and less than 30 grams of marijuana.  (Id. ¶ 26.)  Plaintiff was involuntarily transported to Crozer Chester Medical Center and committed there from March 17 to March 24, 2011, for testing and evaluation, after which he was cleared to return to school.  (Id. ¶¶ 24, 27, 29.)  Defendants obtained the results of that testing and evaluation without his authorization.  (Id.

¶ 27.)  As a result of the involuntary committal, Rodriguez was forced to miss an awards ceremony, classes, and an admissions interview at a medical school.  (Id. ¶ 28.)  After he was discharged and cleared to return to school, he was advised that he was suspended from the University due to the discovery of the knife and marijuana in his backpack.  (Id. ¶ 30.)  He was advised that, to be readmitted, he was required to be assessed by the University's Office of Disabilities Services.  (Id.)  During the time that he was involuntarily committed, Professor Coughlin made libelous statements to campus security to the effect that Rodriguez was restricted from campus, and made statements to the Chester Police Department that Plaintiff had threatened to kill him.  (Id. ¶ 31.)

## II.   LEGAL STANDARD

The Widener Defendants have moved to dismiss Rodriguez's claims for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

### A.   The Section 1983 and Section 1985 Claims

A valid claim brought pursuant to § 1983 requires a plaintiff to allege a "violation of a right secured by the Constitution and . . . show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The "under color of state law" requirement is equivalent to "state action" under the Fourteenth Amendment. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"

Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011) (quoting Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)).

The Complaint alleges that the University is a "corporate educational entity" and that the other Widener Defendants are employees of the University. (Compl. ¶¶ 2-4.) There are three discrete tests to determine whether a private, non-state party engages in state action. Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). The first test determines whether the private entity exercises powers that are traditionally the exclusive prerogative of the state. Mark, 51 F.3d at 1142. The second test addresses whether the private entity has acted in concert or with the help of state officials. Id. The third inquiry involves situations in which "the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Id. (citations omitted); see also Cruz v. Donnelly, 727 F.2d 79, 81 (3d Cir. 1984) (holding that a private party may be deemed a state actor when the private party has acted together with or has obtained aid from state officials, or when its conduct is otherwise chargeable to the state); Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc., 531 U.S. 288, 295 (2001) (holding that "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself'" (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974))). The United States Court of Appeals for the Third Circuit has stated that these inquiries are "fact-specific." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).

In cases concerning a private party's involvement with police, "in the absence of a conspiracy with the police to violate constitutional rights, a [private party's] summons of a police officer to deal with a possible disturbance, does not make it a state actor." Bailey v. Harleysville

Nat'l Bank & Trust, 188 F. App'x 66, 68 (3d Cir. 2006); see also Moldowan v. City of Warren, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'"). However, the Third Circuit has held that a private party may be liable under § 1983 when there is a prearranged plan by which police officers substitute "the judgment of private parties for their own official authority." Cruz, 727 F.2d at 80.

The Widener Defendants argue that Rodriguez has failed to allege a plausible claim under § 1983 because the University is not a political subdivision of the state and its employees were not acting as representatives of a political subdivision of the state. (Defs.' Mem. at 4.) They contend that Rodriguez's conclusory allegation of concerted action, absent allegations of fact establishing a conspiracy with the police — such as the time, place and nature of the alleged agreement to act in concert — is insufficient to withstand a Rule 12(b)(6) motion. (Id. at 4-5.) Rodriguez responds that he has satisfied his pleading burden because the Complaint alleges that the Widener Defendants pre-arranged to have Officer Donohue present at Dean Gifford's office prior to his arrival on March 16, 2011. He adds that "[i]t remains to be seen why the uniformed officer was present. It is highly unlikely that a uniformed Chester Police officer is present for all meetings with students. The University's stated reason for dismissing plaintiff from school and terminating his employment was his possession of a small amount of marijuana and a pen knife. It is well pled that the possession of both were revealed only by search performed by co-conspirator Officer Donohue." (Pl.'s Resp. at 6.)

We conclude that Rodriguez has failed to plausibly plead the state action element of his § 1983 claim and the conspiracy element of his § 1985 claim.[1] The Complaint's assertion of state action is not plausible because it alleges only the bare legal conclusions that all Defendants were "acting under the color of state law as a political subdivision of the Commonwealth of Pennsylvania, or a representative thereof" (Compl. ¶ 35), and "agreed and acted together" to violate his rights when they dismissed him as a student and terminated his employment. (Id. ¶ 32.) Counts I and II are entirely devoid of factual matter to support the allegation of a civil rights conspiracy with the police sufficient to turn the actions of the Widener Defendants into state action, and there is nothing elsewhere in the Complaint from which a conspiratorial agreement or concerted action can be inferred to plausibly plead a constitutional conspiracy. See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) ("We have held that to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred"; explaining that in the conspiracy context, the Complaint must allege "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" (quoting Twombly, 550 U.S. at 556)). The only facts Rodriguez pleads to show concerted action between the Widener Defendants and the police are: (1) that Officer Donohue was present — presumably by prearrangement of the Widener Defendants — at the March 16, 2011 meeting in Dean Gifford's office (Compl. ¶ 17); (2) that Sullivan and Gifford joined Donohue in questioning him without reciting Miranda warnings (id.); and (3) that Sullivan and Gifford were present when Donohue

_____

[1] A valid claim under § 1985 requires a plaintiff to allege that (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to deprive a person or class of persons of equal protection of the laws or equal privileges and immunities under the laws; (3) defendants committed an act in furtherance of the conspiracy; and (4) defendants' actions resulted in injury to the plaintiff. Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

searched Rodriguez's car and found the knife and drugs. (Id. ¶ 26.) None of these allegations, taken as true, plausibly bear out the existence of a civil rights conspiracy, its objectives, and the role each defendant played in carrying out those objectives, so that we could reasonably infer a conspiratorial agreement between the Widener Defendants and the police.

Rodriguez's first allegation, that the Widener Defendants alerted the police to their fears that Rodriguez posed a threat to campus safety and pre-arranged for Officer Donohue to be present at the March 16 meeting, does not sufficiently plead concerted action. Their decision to request to have an officer present at the meeting is indistinguishable from those cases that hold that a private party's summons of a police officer to deal with a possible disturbance does not make it a state actor. See, e.g., Bailey, 188 F. App'x at 68. Accordingly, we conclude that the Complaint does not plausibly allege a constitutional conspiracy arising from the Widener Defendants' alerting the police and pre-arranging for Officer Donohue to be present at the March 16, 2011 meeting.

The second allegation, that Sullivan and Gifford joined Donohue in questioning Rodriguez without reciting Miranda warnings, does not plausibly allege a constitutional violation. The constitutional protections against self-incrimination under the Fifth Amendment are triggered only when a suspect is subject to "custodial interrogation." Thompson v. Keohane, 516 U.S. 99, 102 (1995). Custodial interrogation occurs when law enforcement officials initiate questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 107 (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)). A defendant is in custody when a reasonable person in the defendant's position would perceive that he is not free to leave. Stansbury v. California, 511 U.S. 318, 325 (1994); see also Berkemer v. McCarty, 468 U.S. 420, 442 (1984) (holding that when determining if a suspect is

"in custody," the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation). The Complaint does not allege that Rodriguez was in custody when he was questioned by Gifford and Sullivan in the Dean's office. It alleges only that the questioning resulted in Officer Donohue concluding that it was necessary for Plaintiff to be involuntarily evaluated, and that he was thereafter involuntarily transported to a hospital. (Compl. ¶¶ 22, 24.) It was only after Donohue made this decision that Rodriguez was placed in a police car, where presumably he was no longer free to leave, and there is no allegation that he was questioned after being placed in the police car. Accordingly, we conclude that the Complaint does not plausibly allege a constitutional deprivation arising from the Widener Defendants' questioning the Plaintiff at the March 16, 2011 meeting.

We find that Rodriguez's third allegation, that Sullivan and Gifford were present when Donohue searched Rodriguez's car and found the knife and drugs, also fails to plausibly allege concerted action. An assertion of mere presence at the scene of an alleged constitutional violation, without more, is insufficient to plausibly allege a civil rights conspiracy. See, e.g., Surine v. Edgcomb, Civ. A. No. 08-1921, 2010 WL 2593520, at *3 (M.D. Pa. Apr. 28, 2010) (holding that an allegation of defendant's mere presence at state police barracks prior to the execution of the search warrant alone, without more, failed to articulate a cognizable claim of civil rights conspiracy); Evans v. Chichester Sch. Dist., 533 F. Supp. 2d 523 (E.D. Pa. 2008) (holding that the mere presence of school district's director of pupil services at IDEA due process hearing where alleged constitutional violation took place was insufficient to allege he acted culpably); see also Butler v. Walsh, Civ. A. No. 11-2355, 2012 WL 5996984, at *12 (E.D. Pa. July 19, 2012) (holding in the criminal conspiracy context that mere presence at the scene of

a crime is not, in itself, sufficient to establish that one is an active partner in the intent of another to commit the crime).

Accordingly, we conclude that Rodriguez has failed to meet the pleading requirements to plausibly allege state action by the Widener Defendants. Thus, we grant the Motion as to Count I (Section 1983-wrongful dismissal, wrongful termination of employment, wrongful violation of right to privacy), Count II (Section 1985 conspiracy), Count III (Section 1983-Equal Protection), and Count IV (Fourth Amendment invasion of privacy), and those Counts are dismissed as to the Widener Defendants.

    B.      The Rehabilitation Act Claim

In Count V, Rodriguez asserts a claim for violation of the Rehabilitation Act, 29 U.S.C. § 794.[2] The Complaint alleges that "[w]hen Defendant employees of Defendant Widener regarded him as having suffered a mental disability, it was obligated to provide accommodations with respect to both his status as a student and employee." (Compl. ¶ 54.) The Complaint further alleges that the University refused to give him any accommodation, and instead chose to terminate his employment and dismiss him as a student. (Id. ¶ 55.)

Under the Americans with Disabilities Act[3] and the Rehabilitation Act, "an employer discriminates against a qualified individual with a disability[4] when the employer does not make

---

[2] The statute provides in relevant part that "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Program or activity" is defined to mean "a college, university, or other postsecondary institution." Id. § 794 (b)(2)(A).

[3] The standards set forth in the Americans with Disabilities Act are to be used in evaluating accommodation claims under the Rehabilitation Act. See 29 U.S.C. § 794(d).

[4] "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C)

reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (alteration in original) (citing 42 U.S.C. § 12112(b)(5)(A)). When making a failure to accommodate claim, "[a]n employee can succeed under the Rehabilitation Act only if the employee can demonstrate that a specific, reasonable accommodation would have allowed [him] to perform the essential functions of [his] job." Donahue v. Consol. Rail Corp., 224 F.3d 226, 232 (3d Cir. 2000) (internal citations and quotations omitted). "[E]mployers are not required to modify the essential functions of a job in order to accommodate an employee." Id. Reasonable accommodations include "measures such as 'job restructuring, part-time or modified work schedules . . . acquisition or modification of equipment or devices . . . and other similar accommodations for individuals with disabilities.'" Freeman v. Chertoff, 604 F. Supp. 2d 726, 734 (D.N.J. 2009) (citing 42 U.S.C. § 12111(9)(B)).

The Third Circuit has articulated the standard to be applied to reasonable accommodation claims under the Rehabilitation Act:

> To make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. The plaintiff must make a prima facie showing that reasonable accommodation is possible. If the plaintiff is able to meet these burdens, the defendant then bears

being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Subsection 12102(3)(A) provides that an individual "meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). However, Congress has also provided that one is not "regarded as disabled" if one's impairments "are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." Id. § 12102(3)(B).

> the burden of proving, as an affirmative defense, that the accommodations
> requested by the plaintiff are unreasonable or would cause an undue hardship on
> the employer.

Donahue, 224 F.3d at 229 (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)).  The

Widener Defendants argue that Rodriguez has not pled a plausible claim under the Rehabilitation

Act because he does not allege that he ever notified the University that he claimed to have a

disability or desired an accommodation prior his dismissal as a student and discharge from

employment.

      We find that Rodriguez has failed to allege plausible Rehabilitation Act claims against

the University for failing to provide him with reasonable accommodations regarding both his

employment and his enrollment.  It is well established that "[f]or a school to be able to make

reasonable accommodations for a student, it must have knowledge that such accommodations are

required."  Shamonsky v. Saint Luke's Sch. of Nursing, Civ. A. No. 07-1606, 2008 WL 724615,

at *4 (E.D. Pa. March 17, 2008) (citing Leacock v. Temple Univ. Sch. of Med., Civ. A. No. 97-

7850, 1998 WL 1119866, at *4 (E.D. Pa. Nov. 25, 1998)); see also Nathanson v. Med. Coll. of

Pa., 926 F.2d 1368, 1381 (3d Cir. 1991) (stating that student's failure to request accommodation

would be relevant only if school neither knew nor had reason to know of handicap).  "Almost by

definition, '[f]or a school to be able to make reasonable accommodations for a student, it must

have knowledge that such accommodations are required.'"  North v. Widener Univ., 869 F.

Supp. 2d 630, 636 (E.D. Pa. 2012) (quoting Leacock, 1998 WL 1119866, at *4).  The same is

true for an employment claim where the employer does not know that an accommodation is

required.  See, e.g., Curtis v. Tyco Retail Healthcare Grp., Civ. A. No. 06-4302, 2008 WL

2967044, at *6 (E.D. Pa. July 31, 2008) (holding that, although the Third Circuit has not directly

ruled on this issue, other circuits and a district judge in this circuit have held that a manager

cannot be responsible for discriminating against an employee whom he did not know was disabled); Bobbs v. Allegheny Energy Serv. Corp., Civ. A. No. 06-548, 2007 WL 2428659, at *6 (W.D. Pa. Aug. 22, 2007) (holding that an employer could not be liable for terminating the plaintiff because of a disability about which the plaintiff's superior knew nothing); Cordoba v. Dillard's Inc., 419 F.3d 1169, 1183 (11th Cir. 2005) (rejecting the argument that an employer could be held liable for constructive or assumed knowledge); Hedberg v. Indiana Bell Tel. Co. Inc., 47 F.3d 928, 931-33 (7th Cir. 1995) (holding that an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability).

While the Complaint alleges that the Widener Defendants "obtained results of [Rodriguez's] testing and evaluation from Crozer Chester Medical Center" (Compl. ¶ 27), the Complaint fails to allege, and Plaintiff does not argue, that those tests revealed any impairment that could lead Defendants to believe that he suffered from a disability. Moreover, the Complaint wholly fails to allege that Plaintiff ever requested any accommodations from the University, or that the University should have been at all aware that he was entitled to any particular accommodation. Accordingly, we conclude that Count V fails to state a plausible claim for relief under the Rehabilitation Act based on a theory of failure to offer an accommodation.[5] We grant the Motion as to Count V, and Count V is dismissed as to the Widener Defendants.

C.    The Electronic Communication Interception Claim; Stored Communications Act Claim

---

[5] Because he has not plausibly alleged that the University was aware of his disability, neither can Rodriguez state a plausible Rehabilitation Act claim sounding in disability discrimination.

Count VI attempts to state a claim[6] under the Electronic Communications Protection Act ("ECPA"), 18 U.S.C. §§ 2511, 2520,[7] based on the allegations that (1) "defendants' [sic] went into plaintiff's e-mail and obtained information about plaintiff," and (2) the Defendants unlawfully accessed images from his Facebook page.[8] (Compl. ¶ 61.) He contends that their

---

[6] We note that in Count VI, Rodriguez purports to assert the claim for "Plaintiffs and the Class." (Compl. ¶ 57.) However, the Complaint contains no class allegations and there is only one named plaintiff.

[7] 18 U.S.C. § 2511 provides in relevant part:

Except as otherwise specifically provided in this chapter any person who-- (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be subject to suit as provided in [18 U.S.C. § 2520].

18 U.S.C. § 2511(1). Section 2520 authorizes a civil suit for liquidated or actual damages, punitive damages, and appropriate equitable and declaratory relief. Id. § 2520.

[8] Although the Complaint references emails and Facebook postings and images, Rodriguez has not appended those documents to the Complaint. Defendants have attached the documents to their Motion. (See Def. Ex. 1, 2, 3.) When a court considers matters outside the pleadings, a motion to dismiss ordinarily must be converted to a summary judgment motion because plaintiff has not had an adequate opportunity to respond to the extraneous evidence. Pension Ben. Guar. Corp., 998 F.2d at 1196. However, where the authenticity of documents appended to the moving papers are not disputed and the plaintiff's complaint relies upon them, a plaintiff is presumably on notice of their contents and had the opportunity to refute the evidence. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Ben. Guar. Corp., 998 F.2d at 1196-97. This exception to the general rule prevents a plaintiff with a legally deficient claim from surviving a motion to dismiss simply by failing to attach to the complaint a dispositive document upon which his claim relies. Pension Ben. Guar. Corp., 998 F.2d at 1196. Because these two statutory claims rely upon the email and Facebook postings, and Plaintiff has not disputed the authenticity of documents appended to the Motion, we consider them to be part of the pleadings.

The email, dated March 14, 2011, was sent from Rodriguez's widener.edu email account to approximately 48 widener.edu addresses, including that of Defendant Coughlin. In the email, Rodriguez states he was detained in North Carolina and taken to a psychiatric ward. He was later transferred to a veterans' unit, but woke up in another psychiatric ward. He states he was on involuntary commitment status until March 11, 2011, "when they finally changed me to voluntary because I hadn't rearranged the faces of everyone there (I guess)." (Defs.' Ex. C (parenthetical in original).) The email continues:

actions "were conscious, intentional, wanton and malicious, entitling Plaintiff to an award of punitive damages." (Id. ¶ 66.) Count VIII attempts to state a claim under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq.[9] Rodriguez alleges that the "Defendants' use and access of his Facebook images[10] constitutes an unauthorized acquisition of stored electronic communications in violation of the SCA." (Compl. ¶ 73.)

We find that Rodriguez has failed to plead a plausible claim under the ECPA based on the Defendants accessing his email. While he alleges that the Widener Defendants "went into plaintiff's e-mail and obtained information about plaintiff," the email discloses on its face that Defendant Coughlin was one of the addressees of the email. (See Defs.' Ex. C.) Because

---

I am moving and operating in a cold-fury. I am just trying to maintain my composure until the end of the school year so that I can finish the work that is important to me. I am, however, done with humanity and the pursuit of modern medicine.

I have been harassed about there being a God, and I can't make anyone agree with me, but I promise you that my belief is the only thing keeping me from doing a significant amount of damage to a small town in NC; property, police, and public citizens, all of which treated me lower than dirt. . . .

(Id.) On his Facebook page, where he calls himself "Broseidon Steele," Rodriguez posted as his favorite quotations: "Time doesn't stop moving and neither do I. I'd be a fool to settle down when any moment I could die. . . . I am Superman; and there's no such thing as kryptonite. . . . Finally, after years of patiently waiting, I will show you how to weapon eyes." (Defs.' Ex. A.) He also posted "This is a warning. A fair warning. A stern warning. A plea." (Id.) In another section, he posted "currently painting one of my pistols." (Id.)

[9] 18 U.S.C. § 2701 states that whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section." 18 U.S.C. § 2701(a). Section 2707 provides for a civil action for damages and appropriate equitable and declaratory relief. Id. § 2707.

[10] The images are a photograph of a collection of four handguns and a long gun, and a photograph of a handgun on the seat of an automobile. (Def. Ex. B.)

Rodriguez sent the email to one of the defendants, he cannot plausibly assert a claim that the Widener Defendants improperly "intercepted" the email for purposes of the ECPA. Once the email was legitimately received by one Widener Defendant addressee, Plaintiff cannot make a plausible interception claim under the Act for any Widener Defendant, since Coughlin was free to share it with them or any other member of the general public. Accordingly, we grant the Motion in part as to Count VI, and Count VI is dismissed as to the Widener Defendants to the extent that it purports to state an ECPA claim based on the interception of Plaintiff's email.

However, we conclude that the ECPA claim may proceed to the extent that it is based on the allegation that the Widener Defendants improperly accessed Rodriguez's Facebook images. In addition, we find that the SCA claim, which is also based on the accessing of the Facebook images, may proceed. The Widener Defendants seek dismissal of the two Counts on the ground that the ECPA and the SCA specifically exempt from their reach the interception of an electronic communication which is transmitted through an electronic communication system that is readily accessible to the general public. (Defs'. Br. at 13 (citing 18 U.S.C. § 2511(g)(i))).[11] They argue that Rodriguez's Facebook postings "were accessible to the general public and/or forwarded to certain Widener Defendants by concerned students who had equal and permitted access to Plaintiff's Facebook postings. . . ." (Id.) Thus, they argue, the information Defendants allegedly intercepted falls within the exception because the account was accessible to the general public. (Id.) In response, Rodriguez argues "[i]t remains to be determined how Widener Defendant[s]

---

[11] Section 2511(g) provides an exception to liability under both the ECPA and SCA for information that is accessible to the general public: "It shall not be unlawful under this chapter [the ECPA] or chapter 121 of this title [the SCA] for any person-- (i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public." 18 U.S.C. § 2511(g).

obtained the Facebook images and e-mail information and whether or not they were accessible to the general public. Of primary importance is they were not posted by Plaintiff." (Pl. Resp. at 8.)

We find that Rodriguez has pled plausible ECPA and SCA claims based on the Widener Defendants' alleged accessing of his Facebook images. While the Widener Defendants argue that Rodriguez's Facebook postings are covered by § 2511(g) for purposes of the two claims — because they "were accessible to the general public and/or forwarded to certain Widener Defendants by concerned students who had equal and permitted access to Plaintiff's Facebook postings" — there is no factual basis in the Complaint for this assertion. Further, they cite no legal basis from which we can conclude as a matter of law that Rodriguez's Facebook images are generally available to the public. Thus, this is not an appropriate ground for dismissal under Rule 12(b)(6), and we conclude that the Motion must be denied as to the ECPA and SCA claims to the extent that they reference Plaintiff's Facebook postings.

D.     Invasion of Privacy Claim

In Count VIII, Rodriguez attempts to plead a Pennsylvania law invasion of privacy claim based on the allegation that he "had a reasonable expectation of privacy with respect to his Facebook account," and that he was "never informed of Defendant's [sic] capability and practice of unauthorized access of his Facebook account." (Compl. ¶¶ 76, 77.) Elsewhere in the Complaint, he also alleges that, during the time that he was involuntarily committed, Defendant Coughlin made libelous statements to the effect that Rodriguez was restricted from campus and that Plaintiff had threatened to kill Coughlin. (Id. ¶ 31.) However, he does not specify to whom these statements were made or what effect Coughlin's statements wrought. We conclude that Plaintiff's claim does not satisfy the pleading requirements of an invasion of privacy claim.

Under Pennsylvania law, invasion of privacy encompasses four separate torts: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.  Burger v. Blair Med. Assoc., Inc., 964 A.2d 374, 376 (Pa. 2009) (citing Restatement (Second) of Torts §§ 625B-E).  It appears that only the third and fourth forms of the invasion of privacy tort are possibly applicable in this action.  The Restatement (Second) of Torts sets forth the elements of these invasion of privacy claims:

§ 652D. Publicity Given To Private Life

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

* * *

§ 652E. Publicity Placing Person In False Light

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts §§ 652D-E.  Under each Subsection, "publicity" means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Id. § 652D, Comment a; § 652E, Comment a.  "Thus, it is not an invasion of the right of privacy . . . to

communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."  Id.  A plaintiff must also establish the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it.  Id. § 652D, Comment c; § 652E, Comment c.  Additionally, under each Subsection there can be no liability when the statement is true.  Id. § 652D, Comment d ("When the matter to which publicity is given is true, it is not enough that the publicity would be highly offensive to a reasonable person"); § 652E, Comment a ("[I]t is essential to the rule stated in this Section that the matter published concerning the plaintiff is not true.").

Rodriguez has not plausibly alleged the elements of either tort.  He pleads only the legal conclusion that he had a reasonable expectation of privacy in his Facebook account, that the Widener Defendants never informed him that they had a capability or practice of accessing his account, and that Defendant Coughlin made certain statements.  He does not allege that the Widener Defendants publicized his Facebook postings to the public at large in a manner that would be highly offensive to a reasonable person, or that the information was not of legitimate concern to the public.  He also does not allege that any defendant, with the possible exception of Defendant Coughlin, knowingly or recklessly took actions that placed him in a false light. Accordingly, the Pennsylvania law claim, to the extent that it is based on the accessing of his Facebook images, is dismissed.

The allegations regarding Coughlin's statements are also insufficient to plausibly plead an invasion of privacy tort.  Coughlin allegedly told campus security that, during the time that Rodriguez was involuntarily committed for observation at Crozer Chester Medical Center, that he was restricted from campus.  (See Compl. ¶ 25 (alleging that Rodriguez was informed that he was temporarily suspended by the University.)  Indeed, Rodriguez alleges that this statement is

true.  (See id. ¶ 30 (alleging that after he was discharged and cleared to return to school, Plaintiff was advised that he was suspended from the University, and that to be readmitted, he was required to be assessed by the University's Office of Disabilities Services).)  Accordingly, it cannot serve as a basis for § 652E false light claim.  The statement also fails to plausible plead a § 652D claim, as Rodriguez does not specify how the content of the statement failed to be of legitimate concern to the public.

The alleged statement that Coughlin made on March 24, 2011, to the Chester Police, that Rodriguez had made a death threat against him (see Compl. ¶ 31), also fails to state a plausible § 652E claim because there is no allegation that Coughlin acted in reckless disregard as to its truth or falsity.  In the email, dated March 14, 2011, and addressed *inter alia* to Coughlin, Rodriguez stated to forty-eight members of the campus community that "I have been harassed about there being a God, and I can't make anyone agree with me, but I promise you that my belief is the only thing keeping me from doing a significant amount of damage to a small town in NC; property, police, and public citizens, all of which treated me lower than dirt."  (Defs.' Ex. C.)  He also alleges that he and Coughlin were at odds over Plaintiff's religious views.  (Compl. ¶ 12.)  The facts that the two had a dispute over religion, and that Rodriguez told Coughlin as an addressee of the email that he would do "a significant amount of damage" to public citizens, leads us to conclude as a matter of law that Coughlin's alleged statement that Rodriguez had made a death threat was not recklessly false.  Accordingly, it cannot serve as the basis of a false light claim.  Neither can the statement plausibly support a § 652D claim for improperly publicizing a private matter.  Because Rodriguez himself had previously publicized his threat to do "a significant amount of damage" to public citizens in his email to forty-eight members of the campus

community, it is not plausible that Coughlin's complaint to the police constituted improper publicity.

Accordingly, we conclude that Rodriguez has failed to meet the pleading requirements to plausibly allege a common law invasion of privacy claim against these defendant. Thus, we grant the Motion as to Count VIII, and Count VIII is dismissed as to the Widener Defendants.

## IV. CONCLUSION

For the foregoing reasons, we grant the Widener Defendants' Motion to Dismiss as to Count I (Section 1983-wrongful dismissal, wrongful termination of employment, wrongful violation of right to privacy), Count II (Section 1985 conspiracy), Count III (Section 1983-Equal Protection), Count IV (Fourth Amendment invasion of privacy), Count V (the Rehabilitation Act claim) and Count VIII (the common law invasion of privacy claim). These Counts are dismissed in their entirety as to the Widener Defendants. We also grant the Motion as to Count VI (the ECPA claim), and dismiss that Count as to the Widener Defendants, to the extent that it attempts to assert a claim based on improper accessing of Plaintiff's email. The Motion is denied as to that portion of Count VI that attempts to assert a claim based upon improper accessing of Plaintiff's Facebook images, as well as to Count VII (the SCA claim).

An appropriate order follows.

BY THE COURT:

**/s/ John R. Padova**

_____

John R. Padova, J.