**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MIGUEL RODRIGUEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 13-cv-01336 |
| WIDENER UNIVERSITY, CITY OF | : | |
| CHESTER, PENNSYLVANIA, | : | |
| DAVID COUGHLIN, DENISE | : | |
| GIFFORD, PATRICK SULLIVAN and | : | |
| MATTHEW DONOHUE | : | |

## <u>ORDER</u>

AND NOW, on this          day of                    , 2013, upon consideration of the motion of defendants, City of Chester and Matthew Donohue, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED, and all claims against the City of Chester and Matthew Donohue in his official capacity are DISMISSED WITH PREJUDICE.

**BY THE COURT:**

_____

                                                    , U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MIGUEL RODRIGUEZ | :  CIVIL ACTION |
| | : |
| v. | : |
| | :  NO. 13-cv-01336 |
| WIDENER UNIVERSITY, CITY OF | : |
| CHESTER, PENNSYLVANIA, | : |
| DAVID COUGHLIN, DENISE | : |
| GIFFORD, PATRICK SULLIVAN and | : |
| MATTHEW DONOHUE | : |

**MOTION TO DISMISS UNDER FED. R. CIV. PRO. 12(b)(6) ON BEHALF
OF DEFENDANTS, CITY OF CHESTER AND MATTHEW DONOHUE**

Defendants, City of Chester and Matthew Donohue, move to dismiss plaintiff's complaint, in part, pursuant to Federal Rule of Civil Procedure 12(b)(6) and aver as follows in support of their motion:

1.     Plaintiff's complaint was served on the City of Chester and Matthew Donohue on June 24, 2013.  See Exhibit A.

2.     The parties have stipulated that plaintiff is only proceeding against Officer Donohue on a Fourth Amendment false arrest claim under 42 U.S.C. § 1983.  He is likewise proceeding against the City of Chester on a municipal liability claim under 42 U.S.C. § 1983 based on the alleged false arrest, only.  The parties have stipulated to dismiss all other claims.

3.     Plaintiff may only pursue a section 1983 claim against a municipality or an employee of a municipality in his or her "official capacity" when a policy or custom of that municipality directly caused a constitutional deprivation. Monell v. Dept. of Soc. Srvcs. of City of N.Y., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978); Kentucky v. Graham, 473 U.S. 159, 168, 105 S.Ct. 3099, 3105-06 (1985) (a claim against an individual actor in his or her "official capacity" is a synonym for a claim against the municipality).  Absent such allegations, all claims against the municipality and

its employees in their "official capacity" must be dismissed.

4.      In this case, plaintiff makes no allegations that any policy or custom of the City of Chester directly caused the alleged Constitutional violation.  To the contrary, the complaint is silent as to the City of Chester, except to identify it as a defendant and name it in the *ad damnum* clause.

5.      For these reasons, all claims against the City of Chester and Matthew Donohue in his "official capacity" should be dismissed with prejudice.

WHEREFORE, defendants, City of Chester and Matthew Donohue, respectfully request that their motion be granted and that all claims against the City of Chester and Matthew Donohue in his "official capacity" be dismissed with prejudice.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY:   _/s/ Nicholas A. Cummins_ (nac7591)
      EDWARD J. BRADLEY
      Identification No. 73943
      NICHOLAS A. CUMMINS
      Identification No. 203238
      1601 Market Street, 16th Floor
      Philadelphia, PA 19103
      (215) 561-4300
      Bradleye@bbs-law.com
      Cummins@bbs-law.com
      Attorneys for Defendants,
Date:   July 15, 2013            City of Chester and Matthew Donohue

2

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUEL RODRIGUEZ | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 13-cv-01336 |
| WIDENER UNIVERSITY, CITY OF | : |
| CHESTER, PENNSYLVANIA, | : |
| DAVID COUGHLIN, DENISE | : |
| GIFFORD, PATRICK SULLIVAN and | : |
| MATTHEW DONOHUE | : |

### BRIEF OF DEFENDANTS, CITY OF CHESTER AND
### MATTHEW DONOHUE, IN SUPPORT OF MOTION TO DISMISS

Defendants, City of Chester and Matthew Donohue, move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and submit this brief in support of their motion.

### I.     SUMMARY OF ARGUMENT

The parties have stipulated that the only claims against Officer Matthew Donohue and the City of Chester are for false arrest in violation of the Fourth Amendment pursuant to the 42 U.S.C. § 1983.  All claims against the City of Chester and Officer Donohue in his "official capacity" should be dismissed, because plaintiff has not alleged that a policy or custom of the City directly caused the alleged Constitutional violation.  Monell v. Dept. of Soc. Srvcs. of City of N.Y., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978).

### II.    PROCEDURAL HISTORY AND FACTUAL OVERVIEW

On March 13, 2013, plaintiff, Miguel Rodriguez, filed a complaint seeking to recover for various alleged violations of his civil rights and federal statutes.  See Exhibit A, Complaint.  Plaintiff named Widener University, and its employees, Denise Giffords, Patrick Sullivan, and David Coughlin, as defendants ("Widener Defendants").  Id.  Plaintiff also named the City of Chester and Chester police officer, Matthew Donohue, as defendants.  Id.  Plaintiff's complaint originally

asserted eight causes of action against the defendants[1].  On June 17, 2013, the Court dismissed all claims against the Widener defendants, except for alleged violations of the Electronic Communications Protection Act (Count VI) and Stored Communications Act (Count VII) for alleged unauthorized access to plaintiff's Facebook account.  Plaintiff did not serve his complaint on Officer Donohue and the City of Chester until June 24, 2013.

Plaintiff alleges that on March 16, 2013, he was a student and employee at Widener University, and was instructed to appear in the office of defendant, Denise Gifford, a Dean at the University.  Id. at ¶¶ 8-14.  Prior to the meeting, plaintiff claims that defendant Sullivan had gained unauthorized access to his Facebook account and printed images from the account.  Id. at ¶ 16.  He also alleges that defendants Gifford, Sullivan, and Widener had obtained unauthorized access to plaintiff's medical records in North Carolina.  Id. at ¶ 15.

When plaintiff arrived at the meeting, he was confronted by Gifford, Sullivan and Officer Donohue.  Id. at ¶¶ 17-18.  Plaintiff alleges that he was then "interrogated," without first being given his "Miranda" warnings, "regarding certain email transmissions and Facebook postings."  Id. at ¶ 17.   At the conclusion of the interview, defendant Sullivan told plaintiff that he was suspended because "he was perceived to be a threat to the community and due to the fact that he displayed weapons on Facebook."  Exhibit A at ¶ 20.

Officer Donohue likewise concluded that "it was necessary for Plaintiff to be involuntarily mentally evaluated by a Psychiatrist at Crozer Chester Medical Center."  Id. at ¶ 22.  Officer

---

[1]Violation of 42 U.S.C.A. § 1983 (Count I); Violation of 42 U.S.C.A. § 1985 (Count II); Violation of Equal Protection (Count III); Invasion of Privacy (Count IV); Violation of the Rehabilitation Act (Count V); Violation of the Electronic Communications Protection Act (Count VI); Violation of the Stored Communications Act (Count VII); Violation of the Common Law Right to Privacy (Count VIII)

Donohue then transported plaintiff to Crozer Chester Medical Center in a marked police car. Id. at ¶ 24. Plaintiff alleges that while in the police car, Officer Donohue searched plaintiff's backpack and found a knife and less than thirty grams of marijuana. Id. at 26. On arrival at Crozer Chester, plaintiff was, in fact, involuntarily committed from March 17 to March 24, 2011. Id. at ¶¶ 27-28.

Although plaintiff's complaint alleges multiple counts against the City of Chester and Officer Donohue, the parties have stipulated that plaintiff is only proceeding against Officer Donohue on a Fourth Amendment false arrest claim under 42 U.S.C. § 1983. He is likewise proceeding against the City of Chester on a municipal liability claim under 42 U.S.C. § 1983 based on the alleged false arrest, only. The parties have stipulated to dismiss all other claims.

## III.   ARGUMENT

### A.   Standard for Motion to Dismiss Under Fed. R. Civ. Pro. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for the dismissal of a claim for the "failure to state a claim for which relief can be granted" by way of pre-pleading motion. Fed. R. Civ. Pro. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts that adequately set forth each of the essential elements of a cause of action. Nami v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996). Although the Court must accept all well-pleaded factual allegations contained in the complaint, it need not credit bare allegations, conclusory assertions or unwarranted factual inferences. Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000); Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997); Kost v. Kozakiewwicz, 1 F.3d 176, 183 (3d Cir. 1993); Perry v. Grant, 775 F.Supp. 821 (M.D. Pa. 1991). Bald assertions and conclusions of law will similarly not survive a motion to dismiss. Gardiner v. Mercyhurst College, 942 F.Supp. 1050, 1052 (M.D. Pa. 1995). In short, the complaint's "[f]actual allegations **must be enough to raise a right**

**to relief above the speculative level**..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)....” <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (U.S. 2007) (emphasis added, citations omitted).

    **B.**    <u>**Plaintiff's Claims Against the City of Chester and Officer Donohue in his “Official Capacity” Should be Dismissed.**</u>

    Plaintiff asserts that the City of Chester and Officer Donohue violated his constitutionally protected rights and are subject to liability under 42 U.S.C.A. § 1983 for “his unlawful custody... in restraining plaintiff and wrongfully having him admitted to the hospital” (Count I).   Exhibit A at ¶ 38.  Plaintiff's claims against the City must be dismissed because plaintiff does not plead that his Constitutional violation was directly caused by a policy or custom of the City of Chester.

    Section 1983 provides a cause of action to private citizens for deprivations of their constitutional rights by a person acting under the color of state law.  The statute provides:

> Every **person**, who under color of any statute, ordinance... custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights... secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C.A. § 1983 (emphasis added).  “By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law.” <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906-07 (3d Cir. 1997), <u>citing</u>, <u>Baker v. McCollan</u>, 443 U.S. 137, 99 S.Ct. 2689 (1979).  “In order to state a claim, plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States.” <u>Id</u>., <u>citing</u>, <u>Parratt v. Taylor</u>, 451 U.S. 527, 101 S.Ct. 1908 (1981).  Thus, “proper analysis requires [the court] to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so,

4

whether the city is responsible for that violation." <u>Collins v. City of Harker Heights, Texas</u>, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066 (1992) (citations omitted).

Despite the fact that section 1983 applies to any "person," it is well established that an organization that employs a state actor may be held liable for section 1983 violations, but only under certain limited circumstances. <u>Monell v. Dept. of Soc. Srvcs. of City of N.Y.</u>, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." <u>Id</u>. at 691, 98 S.Ct. at 2036. A municipality may only be held liable when the unconstitutional conduct by the state-actor "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." <u>Id</u>. at 690, 98 S.Ct. at 2035-36.

Thus, there are two potential paths to municipal liability - policy or custom. "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict.'" <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990), <u>quoting</u>, <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299 (1986). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials are so permanent and well settled' as to virtually constitute law." <u>Id</u>., <u>quoting</u>, <u>Monell</u>, 436 U.S. at 690, 98 S.Ct. at 2035. Regardless of whether a plaintiff pursues the claim on custom or policy grounds, "it is incumbent upon a plaintiff to show that a **policymaker** is responsible either for the policy, or through acquiescence, for the custom." <u>Id</u>. (emphasis added). Whether one is a "policymaker" turns on "which official has final,

5

unreviewable discretion to make a decision or take an action." Id. at 1481.

It bears emphasis that it is "only where the municipality itself causes the constitutional violation at issue" through the execution of its policy or custom, that the municipality may be liable. Collins, 503 U.S. at 123, 112 S.Ct. at 1067 (citations omitted).  The simple fact that an employee may have caused a constitutional violation, without more, is not sufficient to impose municipal liability.  "Thus, [the] first inquiry in any case alleging municipal liability under § 1983 is the question of whether **there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.**" Id. (citations omitted, emphasis added).

An organization cannot be liable under 1983 simply because "one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*." City of Canton v. Harris, 489 U.S. 378, 387, 109. S.Ct. 1197, 1204 (1989).  Liability attaches when the policy itself is unconstitutional. Id. at 386, 109 S.Ct. at 1203.  Liability may also attach in the context of the failure to adequately train an employee in an otherwise constitutional policy, "but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388, 109 S.Ct. at 1204.  Under this rule, it is not sufficient merely to show "that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." Id. at 389, 109 S.Ct. at 1205.  Rather, the issue is whether the training program is adequate, and if not, "whether such inadequate training can be justifiably said to be a city policy." Id. at 390, 109 S.Ct. at 1205.

Furthermore, it is well established that a claim against an individual actor in his or her "official capacity" is simply a synonym for a claim against the municipality. Kentucky v. Graham, 473 U.S. 159, 168, 105 S.Ct. 3099, 3105-06 (1985).  Although plaintiff's complaint is silent as to

whether suit is pursued against Officer Donohue in his personal or official capacity, to the extent plaintiff has alleged an "official capacity" claim against Officer Donohue, that claim must be treated as if it is a municipal liability claim against the City of Chester.

In this case, plaintiff's complaint makes absolutely no allegation that any alleged violation of his Constitutional rights was caused by a policy or custom of the City of Chester. Plaintiff has likewise failed to plead that any unspecified policy or custom was adopted or ratified by a City policymaker. Indeed, the complaint makes no reference to the City of Chester whatsoever, except when identifying it as a defendant and Officer Donohue's employer, and reciting its name in the *ad damnum* clause. Exhibit A at ¶¶ 5, 7. As such, plaintiff has failed to plead a viable "Monell" claim for municipal liability against the City of Chester and Officer Donohue in his "official capacity." For this reason, plaintiff's municipal liability section 1983 claims should be dismissed.

## III.   CONCLUSION

Plaintiff may only pursue a section 1983 claim against a municipality or an employee of a municipality in his or her "official capacity" when a policy or custom of that municipality directly caused a constitutional deprivation. Since plaintiff's complaint makes no such allegations, all claims against the City of Chester and Matthew Donohue in his "official capacity" must be dismissed.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY:   */s/ Nicholas A. Cummins* (nac7591)
EDWARD J. BRADLEY/NICHOLAS A. CUMMINS
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
Bradleye@bbs-law.com/Cummins@bbs-law.com
Attorneys for Defendants,
City of Chester and Matthew Donohue

Date:   July 15, 2013

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MIGUEL RODRIGUEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 13-cv-01336 |
| WIDENER UNIVERSITY, CITY OF | : | |
| CHESTER, PENNSYLVANIA, | : | |
| DAVID COUGHLIN, DENISE | : | |
| GIFFORD, PATRICK SULLIVAN and | : | |
| MATTHEW DONOHUE | : | |

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Dismiss a was served on all interested counsel on this date by electronic filing with the Court, or regular mail, postage pre-paid, addressed as follows:

Lewis P. Hannah, Esquire
Clinton L. Johnson, Esquire
1315 Walnut Street, Suite 1326
Philadelphia, PA 19107

Rocco P. Imperatrice, III
Imperatrice, Amarant & Bell, P.C.
3405 West Chester Pike
Newtown Square, PA 19073

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY:   /s/ Nicholas A. Cummins (nac7591)
EDWARD J. BRADLEY
Identification No. 73943
NICHOLAS A. CUMMINS
Identification No. 203238
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
Bradleye@bbs-law.com
Cummins@bbs-law.com
Attorneys for Defendants,
City of Chester and Matthew Donohue

Date:   July 15, 2013

# EXHIBIT A



$350.00

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUEL RODRIGUEZ | : | CIVIL ACTION NO. |
| | : | |
| | : | **13   1336** |
| | : | |
| Plaintiff | : | COMPLAINT |
| | : | |
| v. | : | |
| | : | |
| WIDENER UNIVERSITY, | : | JURY TRIAL DEMANDED |
| CITY OF CHESTER, PENNSYLVANIA, | : | |
| DAVID COUGHLIN, DENISE GIFFORD | : | |
| PATRICK SULLIVAN, MATTHEW | : | |
| DONOHUE | : | |
| Defendants | : | |
| | : | |

## INTRODUCTION

Plaintiff, Miguel Rodriguez, a decorated veteran brings this action to redress the deprivation under color of state law of his constitutional and civil rights. Plaintiff further seeks to recover damages caused by defendants' invasion of Plaintiff's privacy, theft of Plaintiff's private information and unlawful interception access to acquired exported data and other stored electronic communications in violation of The Electronic Communications Privacy Act, The Stored Communications Act, §1983 of the Civil Rights Act, the Fifth Amendment of the United

States Constitution the Pennsylvania Wiretapping and Electronic Surveillance Act 18 Pa. C.S.A. §1507 et. seq. ("PWESA") The Rehabilitation Act 29 U.S.C. § 704 and Pennsylvania Common Law.

## JURISDICTION

This action is brought pursuant to 42 U.S.C. §1983 of the Civil Rights Act. §§ 2511 and 2520 of The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C.§ 1030, § 2701 of The Stored Communications Act ("SCA"), the Fourth and Fifth Amendments of the United States Constitution the Rehabilitation Act , 29 U.S.C. § 704 and the Pennsylvania Wiretapping and electronic Surveillance Act 18 Pa. C.S.A§,5701 et.seq. ("PWESA"), and Pennsylvania common law.

The Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C.§§1331 and 1137 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## VENUE

Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) as each defendant is a resident of and/or maintains a permanent business office in this district.

## PARTIES

1.    Miguel Rodriguez is an honorably discharged veteran of the U.S. Navy and resides at 399 Keanon Drive, Upper Chichester, PA 19061.

2.     The defendant, Widener University ("Widener") is a corporate educational entity which provides post-secondary and graduate school education.  Its main place of business is located at One University Place, Chester, PA 19013.

3.     The defendant, Dr. Denise Gifford ("Gifford") is an adult individual who is an Associate Provost Dean of Students at Widener University

4.     The defendant David Coughlin ("Coughlin") is an adult individual who is a professor at Widener University.

5.     The defendant, City of Chester is a municipal corporation with its principal place of business located at One Fourth Street, Chester, PA 19013.

6.     Defendant Patrick Sullivan ("Sullivan") was at all times relevant an employee of Widener University and employed as the Director of Campus Safety.

7.     Defendant Matthew Donohue ("Donohue") was at all times relevant an employee of the City of Chester employed as a police officer.

## FACTUAL AND GENERAL ALLEGATIONS

8.     Plaintiff initially enrolled at Widener University in September 2008 under the G.I. Bill after serving 6 years in the U.S. Navy.

9.     While in the Navy Plaintiff trained in search and rescue, first aid and emergency medicine and as an Emergency Medical Technician (EMT).

10.     Plaintiff was enrolled in the Biology Pre-Med Program in pursuit of his goal to become a medical doctor.

11.     Plaintiff achieved above average grades and at the time of the occurrence of the facts herein was interviewing with various medical schools for admission.

12.     At the time of his enrollment, Plaintiff was assigned defendant Coughlin as his advisor. Plaintiff and Coughlin were at odds as a result of Plaintiff's view on "Creationism" and Coughlin's views on "Evolution". Defendant Coughlin expressed a dislike for plaintiff because of his race African American. Also defendant Coughlin refused to provide any assistance to Plaintiff and ignored his requests for help or advice.

13.     While enrolled Plaintiff was employed by Defendant Widener as an advisor and Operations Manager.

14.     On or about March 16, 2011, Plaintiff was required to appear in the office of Dean Denise Gifford.

15.     On information and belief, Defendants, Gifford, Sullivan and Widener obtained proprietary information from Plaintiff's medical providers in North Carolina without Plaintiff's authorization.

16.     On or about March 16, 2011, without Plaintiff's authorization Defendant Sullivan gained access to Plaintiff's Facebook account and printed images therefrom.

17.     Without being advised of his "Miranda" rights, Plaintiff was interrogated by defendants Donahue, Sullivan and Gifford regarding certain email transmissions and Facebook postings.

18.     During the interrogation Plaintiff was asked questions about his meritorious military service.

19. According to defendant Sullivan, plaintiff was suspended due to the fact that he was perceived to be a threat to the community and due to the fact that he displayed weapons on Facebook.

20. Also during the interrogation, defendant Donohue mistakenly thought he heard plaintiff say in, the presence of defendant Sullivan, something to the effect that he was trained to kill and would kill again.

21. Defendant Sullivan testified under oath that plaintiff did not make such a statement.

22. At the end of the interrogation defendant Donohue concluded that since plaintiff was "very calm", it was necessary for Plaintiff to be involuntarily evaluated mentally by a Psychiatrist at Crozer Chester Medical Center.

23. On information and belief, defendant Donohue communicated his conclusions to defendants Gifford and Sullivan

24. At the conclusion of the interrogation, plaintiff was involuntarily transported by Donahue in a marked police car to the Crozer Chester Medical Center.

25. During the investigation plaintiff was informed that he was temporarily suspended by defendant Widener University.

26. While in the police car and outside of the presence of defendants Sullivan and Gifford, defendant Donohue searched Plaintiff's backpack and found a knife and less than 30 grams of marijuana.

27. For the period commencing March 17, 2011 and ending March 24, 2011, Plaintiff was subjected to involuntary testing and evaluation. Thereafter, on information and belief,

defendants, without Plaintiff's authorization, obtained results of his testing and evaluation from Crozer Chester Medical Center.

28.     As the result of the involuntary commitment, Plaintiff was forced to miss an interview for admission to medical school, awards and school.

29.     On or about March 24, 2011 plaintiff was discharged and cleared to return to school.

30.     By letter dated March 25, 2011, Plaintiff was advised that he was suspended from the University because the Chester Police, while plaintiff was in police custody, found less than 30 grams of marijuana and a knife in his book bag.  Conversely, in order to be readmitted, plaintiff was required to be assessed by a Dr. Beth Howlett in the office of Disabilities Services at defendant Widener University.

31.     For the period commencing March 16, 2011 and ending March 24, 2011, defendant Coughlin made various libelous statements.

        a.     On or about the evening of March 16, 2011 Coughlin placed a call to campus security falsely stating that plaintiff was restricted from campus.

        b.     On or about March 24, 2011 Coughlin made a series of calls to Detective Nelson Collins of the Chester Police Department to state that plaintiff had threatened to kill him.

32.     Upon information and belief on or about March 25, 2011 defendants Widener University, City of Chester Pennsylvania, Gifford, Patrick Sullivan and Donohue agreed and acted together to dismiss plaintiff as a student from the University and terminate his employment with the University.

## COUNT I

### Violation of the Civil Rights Act (42 U.S.C. §1983).

33.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set
forth herein.

34.   Section 1983 states in pertinent part:

> "Every person who, under color of any statute, ordinance,
>
> regulation, custom, or usage, of any State or Territory
>
> or the District of Columbia, subjects, or causes to be
>
> subjected, any citizen of the United States or other person
>
> within the jurisdiction thereof to the deprivation of any rights,
>
> privileges, or immunities secured by the Constitution and laws,
>
> shall be liable to the party injured in an action at law, suit in
>
> equity or other proper proceeding for redress..."

35.   All defendants are "persons" within the meaning of §1983, in that at all times material
hereto they were acting under the color of state law as a political subdivision of the
Commonwealth of Pennsylvania, or a representative thereof.

36.   Plaintiff's unwarranted dismissal from the University, and the termination of his
employment deprived plaintiff of his right to privacy as protected by the Fourth Amendment of
the United States Constitution.

37.   Plaintiff first learned of defendants unlawful deprivation of his privacy rights on March
17, 2011, therefore this action has been commenced within §1983's applicable two year statute
of limitation;

38.   Plaintiff's unlawful interrogation by the University and his unlawful custody by the

Chester Police Department in restraining plaintiff and wrongfully having him admitted to the

hospital violated his rights under the fourth and fifth amendments.

39.   Defendants conduct in accessing and distributing plaintiff's e-mail and Facebook images

resulted in the deprivation of Plaintiff's constitutionally protected right to privacy.  Defendants'

acts were intentional, extreme and outrageous, and thereby entitles plaintiff to an award of

punitive damages.

## COUNT II

### 42 U.S.C. §§ 1985

40.   Plaintiff incorporates reference paragraphs 1 through 37 though fully set forth herein.

41.   On information and belief, defendants were acting under color of law, to deprive plaintiff

of his rights secured by the Fourteenth Amendments to the United States Constitution in

violation of 42 U.S.C. §§ 1985.

42.   On information and belief, the aforesaid defendants, and each of them, engaged in actions

in furtherance of the aims of a conspiracy that resulted in the deprivation of the aforesaid

constitutional and statutory rights of plaintiff.

## COUNT III

### VIOLATION OF EQUAL PROTECTION

43.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set

forth herein.

44.   The City of Chester and Widener are state actors for purposes of 42 U.S.C. §1983.

45.   These Defendants violated Plaintiff's rights to equal protection because they **A.**

discriminated and retaliated against him based upon his disability. **B.** discriminated and retaliated

against him based on his race, and C. he was treated differently not because of his race or his disability but his status as a "class of one."

46.    They also violated his equal protection rights when for arbitrary and capricious reasons failed to follow their own policies concerning accommodations.

47.    Plaintiff suffered injuries as a result of the Defendants conduct.  First he was dismissed from the pre-med program.  Second, he lost his jobs as tutor and Advisor and Operations Manager at the University.  Third, he suffered emotional distress, anxiety embarrassment and fear.

## COUNT IV

## INVASION OF PRIVACY (U.S. Cons. Amend IV)

48.    Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

49.    At a minimum and pursuant to the Fourth Amendment of the U.S. Constitution, Plaintiff has a reasonable expectation of privacy with respect to his Facebook account and more importantly his communications with medical professionals.

50.    In Particular, defendants obtained medical information without the consent of plaintiff from the hospitals he was admitted to.

## COUNT V

## VIOLATION OF THE REHABILITATION ACT

51.    Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

52.     Widener is in receipt of federal funds and is a federal contractor.  Hence it is bound to observe the requirement under 29 U.S.C. § 704 of the Rehabilitation Act.

53.     In pertinent part, The Rehabilitation Act defines the term "individual with a disability" means any person who "...is regarded as having such an impairment..."

54.     When Defendant employees of Defendant Widener regarded Plaintiff as having suffered a mental disability, it was obligated to provide accommodations with respect to both his status as a student and employee.

55.     Widener refused to give Plaintiff any accommodation instead choosing to terminate his employment and dismissing him as a student.

## COUNT VI – INTERCEPTION OF ELECTRONIC COMMUNICATIONS UNDER THE ECPA

56.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

57.     Plaintiffs and the Class assert this Count against all Defendants, jointly and severally, pursuant to §§2511 and 2520 of the ECPA, 18 U.S.C. §§2511 and 2520.

58.     Section 2511 of the ECPA provides in part:

(1)     Except as otherwise specifically provided in this chapter any person who-

(a)     Intentionally intercepts, endeavors to intercept or procures any other person to intercept, or endeavor to intercept, any...electronic communications;

(b)     intentionally uses, or endeavor to use, the contents of any...electronic communication knowing or having reason to know that the information was obtained through the interception of a[n]...electronic communication in violation of this

subsection; ...shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

59.     Section 2520 of the ECPA provided in part:

(a)     In general – Except as provided in section 2511(2)(a)(ii), any person whose...electronic communication is intercepted...or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

(b)     Relief – In the action under this section, appropriate relief includes –

(1)     such preliminary and other equitable or declaratory relief as may be appropriate

(2)     damages under subsection (c) and punitive damages in appropriate cases; and

(3)     a reasonable attorney's fee and other litigation costs reasonably incurred.

60.     Section 2510 of the ECPA, setting forth the definition of the terms in §2511, defines "person" to include "any employee, or agent of the United States or any State or political subdivision thereof..." 18 U.S.C. §2510(6).  Accordingly, each Defendant is a "person" within the meaning of §2511.

61.     Section 2510 defines "electronic communication" to include "any transfer of signs, signals, writing, imaging, sounds, data, or intelligence of any nature transmitted in whole or in part by a wife, radio, electromagnetic, photo electronic, or photo optical system that affects interstate or foreign commerce,..." 18 U.S.C. §2510(12).  Accordingly, defendants' went into plaintiff's e-mail and obtained information about plaintiff.

62.     Section 2510 defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.  18 U.S.C. §2510(4) Section 2510 defines "electronic, mechanical, or other device" to mean "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," subject to exclusions not relevant to this action.  18 U.S.C. §2510(5)

63.     By virtue of the foregoing, Plaintiff is a "person whose…electronic communication is intercepted…or intentionally used in violation of this chapter" within the meaning of §2520.

64.     By virtue of the foregoing, Defendants are liable to Plaintiff for their violations of §§2511 and 2520 of the ECPA.

65.     Since Plaintiff first learned of Defendants' unlawful accessing of his Facebook account on March 17, 2011, this action is timely and not beyond ECPA's appli8cable statute of limitations.

66.     Defendant's actions complained of herein were conscious, intentional, wanton and malicious, entitling Plaintiff to an award of punitive damages.

67.     Plaintiff has no adequate remedy at law for Defendants continued violation of the ECPA.

## COUNT VII

## STORED COMMUNICATIONS ACT (18 U.S.C.§2701)

68. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

69. Section 2701 of the SCA provides, in pertinent part:

Except as provided in subsection (c) of this section, whoever-

1)      intentionally accesses without authorization a facility through which an electronic communication service is provided; or

2)      intentionally exceeds an authorization to access that facility; and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage such system shall be punished as provided in subsection (b) of this section.

70.     Section 2711 of the SCA defines "electronic communication" as "any transfer signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo electronic or photo optical system that affects interstate or foreign commerce..." 18 U.S.C. §§2711, 2510(12).  Accordingly, the webcam images complained of are "electronic communications' within the meaning o the SCA.

71.     Section 2711 of the SCA defines "person" to include "any employee, or agent of the United states of a State or political subdivision thereof, and any individual, partnership association..." 18 U.S.C. §§2711, 2510(6).  Accordingly, all Defendants are "persons" within the meaning of the SCA.

72.     Section 2711 of the SCA defines "electronic storage" to include "any temporary intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof... "18 U.S.C. §§2711, 2510(17)(A).

73.     Defendants' use and access of Plaintiff's Facebook images constitutes an unauthorized acquisition of stored electronic communications in violation of the SCA.

74.     Section 2701(b) of the SCA provides punishment in those instances where the unauthorized acquisition of stored electronic communications was not done for commercial gain or advantage of "a fine under this title or imprisonment for not more than six months, or both..."

Section 2711 of the SCA defines "person" to include "any employee, or agent of the United states of a State or political subdivision thereof, and any individual, partnership association..." 18 U.S.C. §2701(b)(b)(B).

1)   Actual damages, but not less than liquidated damages computed at the rate of $100.00 a day for each day of violation, or $1,000.00, whichever is higher.

2)   Punitive damages.

3)   A reasonable attorney's fee and other litigation costs reasonably incurred.

## COUNT VIII – INVASION OF
## PRIVACY; PENNSYLVANIA COMMON LAW

75.   Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

76.   At all times material hereto, and pursuant to the common law of Pennsylvania, Plaintiff had a reasonable expectation of privacy with respect to his Facebook account.

77.   Plaintiff was never informed of Defendant's capability and practice of unauthorized access of his Facebook account.

**WHEREFORE**, Plaintiff, request judgment in their favor and against Defendants, Widener University, City of Chester Pennsylvania, David Coughlin, Denise Gifford, Patrick Sullivan, and Matthew Donohue

1)   for compensatory damages;

2)   for punitive damages;

3)   for liquidated damages pursuant to the PWESA;

4)   for attorneys' fees and costs;

5)   for declaratory and injunctive relief; and

6)      for such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues for which a right to jury trial exists.

**WHEREFORE,** plaintiff demands judgment, jointly and severally, against the defendants and pray for the following relief:

1.      Compensatory damages;

2.      Emotional damages;

3.      Pain and Suffering;

4.      Punitive Damages;

5.      Attorneys' Fees and Costs; and

6.      Such other relief as the Court may deem just.

Respectfully submitted,

Lewis P. Hannah, Esquire

Attorney for Plaintiff

1315 Walnut Street, Suite 1326

Philadelphia, PA 19107

lphcourtfilings@verizon.net

Clinton L. Johnson, Esquire

Attorney for Plaintiff

1315 Walnut Street, Suite 1326

Philadelphia, PA 19107

Clintonjohnson1010@comcast.net

Dated: 3/12/13